UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

---------------------------------------------
IN RE:                                   )          CHAPTER 13
                                         )
FRED C. OUELLETTE and                    )
JAN A. OUELETTE,                         )          CASE NO. 07-30865
                                         )
        Debtors.                         )          RE: DOC. I.D. NO.  47
---------------------------------------------

**MEMORANDUM ORDER ON MOTION TO DETERMINE STATUS OF CLAIMS**

The above-captioned motion pursuant to Bankruptcy Code 506(a) (hereafter, the "Motion"), seeking to have the claim of Nationwide Credit Service, Inc. (hereafter, "Nationwide") determined to be unsecured, came before the Court on December 6, 2007 after due notice.  Having now received the arguments of counsel and certain stipulated evidence, and having now reviewed all relevant files and records of this case, the Court hereby finds and concludes as follows:

1.     It is undisputed that for the purposes of this contested matter the fair market value of real property of the Debtors known as 104 Eastview Road, Terryville, Plymouth, Connecticut (the "Residence") is $115,000.00.

2.     The Motion alleges that the following claims may be secured by the Residence:

        a.  a tax lien claim in favor of the Town of Plymouth (hereafter, the "Tax Lien Claim");

        b.  one or more sewer lien claims in favor of the Town of Plymouth (hereafter, the "Sewer Lien Claims");

c.   an association lien claim in favor of the Fall Mountain Lake Property Owners Association (hereafter, the "Association Lien Claim");

d.   a first mortgage claim in favor of the Farmers Home Administration (hereafter, "FHA"), United States Department of Agriculture (hereafter, the "FHA Mortgage Claim");

e.   a second mortgage claim in favor of Nationwide, as successor to AMRE Decks (hereafter, the "Nationwide Mortgage Claim"); and

f.   several judgment lien claims in favor of various medical and other creditors of the Debtors (hereafter, the "Judgment Lien Claims").

3.   Under Section 506(a), the Debtors bear the initial and ultimate burden of proving that the Nationwide Mortgage Claim is not supported by equity in the Residence, *i.e.* that it is not in fact a secured claim.

4.   The Debtors have failed to demonstrate that there is a Tax Lien Claim encumbering the Residence.[1]

5.   It appears that the Sewer Lien Claims are prior in right to the Nationwide Mortgage Claim, and that such claims, in the aggregate, total not more than $1,670.51.[2]

6.   The Debtors have failed to demonstrate that there is an Association Lien Claim

---

[1] The Debtors have not scheduled a property tax claim for the Town of Plymouth. In addition, the Town of Plymouth has not filed a proof of claim for municipal property taxes, although it did file a claim for water and sewer use, *see* fn. 2.

[2] The Debtors' Schedule "E" states that the Town of Plymouth holds a claim for "water line" charges of $220, and a claim for "sewer" of $1,109.37.  Subsequent to the Debtors' scheduling, the Town of Plymouth filed a proof of claim (Claim No. 20) in the aggregate amount of $1670.51.  This amount included "sewer use" ($1431.56) and "water line" ($238.95).  For purposes of this matter only, the Court will utilize the Town of Plymouth's full claim as stated in its proof of claim.  Such use does not constitute an allowance of such claim in that amount.  In fact, the Court observes that although the entire proof of claim is asserted as a "secured" claim, the attachment thereto suggests that the "water line" charges may not be secured by a statutory or other lien.

encumbering their Residence.[3]

7. It is undisputed that the FHA Mortgage Claim is prior in right to the Nationwide

Mortgage Claim. However, the Court finds that the Debtors have not proven that such

claim exceeds the sum of $97,434.34.[4]

8. The secured status of the Nationwide Mortgage Claim is not challenged by the

Debtors on any basis other than Section 506(a). For the purposes of this matter only, the

---

[3] The Debtors have not scheduled a claim for the Fall Mountain Lake Property Owners' Association. In addition, that Association has not filed a proof of claim in this case.

[4] The Debtors' Amended Schedule "D" stated that the FHA Mortgage Claim was in the undisputed amount of $97,434.34 (hereafter, the "Scheduled Claim"). Arguably, under principles of estoppel, that Scheduled Claim should be the starting and ending point of the Court's analysis of the secured amount of the FHA Mortgage Claim.

Nonetheless, the FHA has filed a proof of claim (Claim No. 6) asserting that its claim, secured by the Residence, is in the amount of $193,437.02. Based upon the present state of the record, the Court finds that proof of claim (hereafter, the "Proof of Claim") to be unintelligible. The Court suspects that the large difference between the Scheduled Claim and the Proof of Claim is due to FHA's inclusion in its Proof of Claim of the impact of a certain Subsidy Repayment Agreement between the FHA and the Debtors (hereafter, the "SRA").

Even assuming the Debtors' obligations under the SRA are appropriately secured by the FHA Mortgage, it is not at all clear to the Court that those SRA obligations have priority over the Nationwide Mortgage Claim. Specifically, the SRA seems to provide that in the context of a voluntary sale of the Residence, the Debtors are entitled to receive funds (for principal payments, expenses of sale, and "original equity") *before* they are obligated to remit subsidy repayment funds to FHA. Cast in the context of a Section 506(a) analysis, if the SRA does not provide for subsidy repayment obligations to have priority over certain aspects of the Debtors' equity, then they should not have priority over the Nationwide Mortgage Claim.

In any event, the Proof of Claim provides no specific accounting of the claim amount. Ideally, the Debtors would have produced an FHA witness to explain the Proof of Claim, but they did not. For all these reasons, the Debtors have failed to demonstrate, for purposes of this contested matter, that the FHA Mortgage Claim is in an amount exceeding $97,434.34.

3

Court considers the Nationwide Mortgage Claim to be in the amount of $15,187.28.[5]

9.   The Judgment Lien Claims have been determined in a separate contested matter to be unsecured claims.[6]

10.   Given the state of the record in this matter, it is impossible for this Court to conclude, as urged by the Debtors, that there is insufficient equity in the Residence to secure the Nationwide Mortgage Claim.

11.   Because the total of the Nationwide Mortgage Claim and the amount of all Claims prior in right to that Claim[7] is less that the agreed fair market value of the Residence, the Nationwide Mortgage Claim, if ultimately allowed in an amount equal to or less than the amount claimed,[8] is fully secured.  Accordingly, the Motion (Doc. I.D. No. 47) must be, and hereby is, **DENIED**.

**IT IS SO ORDERED.**

Dated: December 20, 2007                                BY THE COURT

                                                    Albert S. Dabrowski
                                                    Chief United States Bankruptcy Judge

---

[5] The Debtors' Amended Schedule "D" stated that the Nationwide Mortgage Claim was in the undisputed amount of $11,025.18.  However, Nationwide has filed a secured proof of claim (Claim No. 12) in the amount of $15,187.28.   For purposes of this matter only, the Court will utilize Nationwide's full claim as stated in its proof of claim.  Such use does not constitute an allowance of such claim in that amount.

[6] On December 6, 2007, this Court entered an order, based upon the absence of objection, granting the Debtors' motion to determine the Judgment Lien Claims to be unsecured (Doc. I.D. No. 48).

[7] The FHA Mortgage Claim and the Sewer Lien Claims.

[8] *See* fn. 5.

4